**SEVERNS, Exr., Appellant, v. BOYLAN, Appellee.**

Ohio Appeals, Ninth District, Summit County.

No. 3650. Decided July 19, 1944.

Messrs. Hutchison & Firestone, Akron, for Appellant.
Messrs. Gottwald, Hershey & Hatch, Akron, for Appellee.

302

 

(Ross, P. J., Hildebrant and Matthews, JJ., of the First
Appellate District sitting by designation.)

## OPINION

By MATTHEWS, J.:

The subject-matter of this action consists of several cer-
tificates of deposit in The Wm. H. Evans Building & Loan
Association, a certificate of stock of that Association and a
certificate of stock of The Ohio Edison Company. At the
second trial, the record of which is under review on this
appeal, the parties stipulated that the only issue was owner-
ship and possession of these certificates. By this stipulation,
the action was, in effect, reduced to an action in replevin
(§12052 GC) and a jury was impaneled to decide the issue. At
the close of all the evidence all parties moved for an instructed
verdict. The court directed a verdict for the defendant—the
appellee in this court—and entered judgment in her favor as
to all the property involved. This appeal brings under re-
view that judgment.

(1) Before entering upon the task of analyzing the evi-
dence, certain preliminary matters should be noticed as
they bear upon the quantum of proof required of the
plaintiff-appellent to discharge the burden upon him.

This is not an action to recover for breach of contract
to which the defense of fraud has been interposed. Cases
such as Thompson v. Bank, 32 C. C., 131, affirmed in **82 Oh
St., 446,** on the necessity of setting out the facts of fraud in
the pleading have no application.

Nor is the plaintiff's action one based on fraud. A com-
plete cause of action could be pleaded without mentioning
fraud. Citations such as **19 Oh Jur. 495,** and **29 Oh Jur. 1254,**
stating the rules of pleading applicable to cases based on
fraud are irrelevant. The fact that the pleader indulged in
too great particularity does not change the nature of his
rights.

This is an action based on right of ownership and posses-
sion. It is true that in the process of proving ownership and
right to immediate possession, fraud may appear—but the

plaintiff could recover without any evidence of fraud, provided, he proved title and right to possession in some other way. The case cannot be placed in that category and decided by the application of the rules peculiar to that class.

However, if the ultimate issue in this case were fraud, we do not thnk it would increase the plaintiff's burden. Counsel rely on **McAdams v. McAdams, 80 Oh St., 232** and **Simons v. Becker, 63 Oh Ap. 374,** to support them in their contention that the plaintiff could only recover by proving fraud by clear and convincing evidence. But those were cases in which the plaintiff was seeking to have the court enter a decree setting aside a solemnly executed written conveyance which he had delivered with the intention of transferring title. In that class of cases a chancellor does require clear and convincing evidence as a prerequisite to granting a decree, divesting title so solemnly and deliberately conferred.

If fraud were the basis of this action, it would fall in the general class of actions at law for fraud, and the plaintiff would discharge the burden of proof by making fraud appear by the preponderance of the evidence. In **19 O Jur., 519,** it is said:

"It seems, however a logical view to take that in the ordinary case of an action based on fraud, such as on a claim for damages because thereof, a preponderance of the evidence is sufficient; while in the case in which it is sought to set aside or reform a written contract because of the fraud, that clear and convincing proof is necessary, in accord with the well-settled rule that written instruments should not be rescinded or set aside except upon proper allegations, which are supported by evidence of a clear and convincing character."

See, also Am. Jur., 118, et seq.

Counsel argues that the plaintiff's action is based on rescission for fraud, and that that fact brings it within the class requiring clear and convincing evidence. As we view it, rescission alone is not sufficient to bring the case within that class. The distinctive characteristic of that class and the one that imposes the higher degree of proof is the nature of the relief sought. If it is necessary to seek the aid of the court to set aside a conveyance, to cancel a written instrument, to remove a cloud or otherwise protect the owner, many courts hold that clear and convincing evidence is required to

secure such special relief. But where the title to personal property transferable by delivery is obtained by fraud, the defrauded owner requires no special relief. Indeed he need not resort to court at all. He can rescind by his own act. If he can secure possession of his property, there is no occasion for filing a law suit. If he cannot, the only action necessary is one to recover possession. Even a demand for the return is not necessary before action. In 46 Am. Jur., 34, it is said:

"A demand for the return of property prior to the institution of a suit to recover its possession is not necessary where the possession of property was acquired tortiously. So where goods have been obtained by fraud by a purchaser, or otherwise unlawfully obtained, the seller or true owner may, without previous demand, maintain replevin for the goods against any person not holding them as an innocent purchaser for value."

While in the view we take of this case, the quantum of proof required is not material, we state our views on the subject in order that our conception of the nature of the case, as disclosed by the record, may be made to appear more clearly.

(2) The plaintiff's testatrix in order to secure duplicate certificates from the issuers was required to and did file affidavits with the issuers. These affidavits were offered in evidence and excluded on the objection of the defendant. No error was committed in so doing. They were clearly self-serving, and we can think of no theory which would make them admissible as evidence of the facts therein recited.

(3) On cross-examination of the defendant, she stated that her husband had delivered these certificates to her and at the time told her that the plaintiff's testatrix had given them to him to apply on fees, that he had taken care of her business for many years, and she gave him this stock to apply on her account. On objection, the court admitted this evidence, for the purpose of showing a defect in the title and excluded it for all other purposes. We find no error in this.

To begin with, it appears to be a confidential communication between husband and wife, not in the known presence of a third person competent to be a witness. Under §11,494, GC, she would not be a competent witness.

Assuming her competency as a witness, the testimony is hearsay and falls within no exception to the rule of exclusion.

It is true that declarations by one in possession which characterize his possession are held to be admissible as part of the res gestae, even though self-serving but this exception has never been held to be broad enough to include narration as to the source of title. In the annotation to the case of Freda v. Tischbein, 49 L. R. A. (n. s.) (174 Mich 391) 700 at 706, it is said:

"All the cases are in accord in holding that the res gestae rule does not extend so far as to include declarations as to source of title. Such declarations are not properly a part of the res gestae of the possession, since they are not explanatory of the possession, but of the method of obtaining title, which is a past event."

To the same effect is Hopkins v. Heywood, 49 L. R. A. (n. s.) ( 86 Vt. 486), 710.

(4) The defendant was permitted to testify to a conversation with the testatrix. As she was called by the plaintiff, her incompetency as a witness was waived. The defendant testified that the testatrix told her that Judge Boylan, through whom defendant claimed title was "just like a son to her and she was going to leave all of her property to him." The defendant relies upon a claim of transfer by testatrix to Judge Boylan inter vivos. Her statement has no tendency to prove any such transfer. It states an intention to convey by will which, of course, could not take effect until testatrix's death, and, as her last will contained no such provision, it never took effect.

(5) Now, what does this record show?

The plaintiff's testatrix, Flora A. Kintz, died on August 17th, 1940, at the age of 85 years. The defendant's husband, Edward H. Boylan, who was an attorney-at-law, had been her legal adviser, business agent, and intimate friend for more than twenty years just prior to his death on August 10th, 1935.

During the years 1922, 1923, and 1924, Flora A. Kintz made five deposits of $500.00 each and one of $750.00 in The Wm. H. Evans Building & Loan Association, and received from it certificates of deposit, all of which were payable to her except the one for $750.00, which was payable to Flora Kintz or John Kintz, who was her husband and who died many years before her death. In 1924, Flora Kintz purchased five shares of the

paid up capital stock of The Wm. H. Evans Building & Loan Association and received a certificate therefrom in which it was recited that she was the owner of the five shares of stock. The record does not show that Edward H. Boylan had anything to do with the making of these deposits or securing these certificates of deposit or the certificate of stock.

On August 27th, 1930, Flora Kintz bought ten shares of the 7% preferred stock of The Ohio Edison Company and received a certificate thereon reciting the facts of her ownership. The record does not show that Edward H. Boylan had anything to do with this purchase.

In October, 1937, Flora Kintz notified The Ohio Edison Company that her certificate for ten shares of its stock had been lost, destroyed or stolen, and upon her making affidavit that she was still the owner and giving an indemnity bond, a duplicate certificate was issued on January 29th, 1940.

In April, 1938, Flora Kintz notified The Wm. H. Evans Building & Loan Association that the certificates of deposit which it had issued to her had been lost, destroyed or stolen, and upon her making an affidavit of continued ownership and giving an indemnity bond duplicate certificates were issued to her in April, 1938.

So far as the record shows no one during the life-time of Flora Kintz challenged her title to the property represented by these certificates. The Ohio Edison Company and The Wm. H. Evans Building and Loan Association paid dividends to her regularly on the corporate stock. She collected interest regularly on the certificates of deposit, as it accrued and finally was paid most of the principal. Neither Edward H. Boylan nor the defendant at any time during the life of Flora Kintz asserted any right of any description to any of this property.

Shortly after Flora Kintz's death, the defendant appeared with these certificates and for the first time asserted title to them. In explanation of the long delay in asserting title the defendant, in violation of §11,494 GC, and only by the grace of the plaintiff's waiver of the provisions of §11,495 GC, testified to the confidential hearsay statement of her husband, directing her to place the certificates in her safe deposit box and not transfer them, that he wished Mrs. Kintz to have the income from the stock as long as she lived. And, notwithstanding, the waiver of the bar of §11,495 GC, the only explanation that she could give of her husband's possession of these certificates was the statement of Mrs. Kintz that she intended to

make a will in his favor, which had no tendency at all to show a gift or transfer in praesenti. The only other evidence that is suggested tends to prove a transfer of title is her testimony that Mrs. Kintz owed her husband for services rendered and money advanced. This claim was presented, as though it had been kept in the form of a book-account, but it is rather clear that the witness prepared it from information derived from various sources and that it has not the reliability of an account kept day by day. No book of any sort was presented and it was admitted that no account existed showing a credit on account of having received these certificates. But even assuming that there was an indebtness, its existence would have no tendency to show a transfer of the title to these certificates. The most that could be claimed would be that the attorney might have a possessory lien on the certificates to secure payment of his fees, but on this record, we do not think even that right existed. 5 Am. Jur., 388, et seq.

In an effort to show that the defendant was a purchaser for value, she testified that she had supplied the money and signed notes and mortgages for her husband. No dates or amounts were given and no corroborative evidence furnished. It all rested in vague generalities of acts between husband and wife, not in the known presence of a third person.

This record shows clearly that Flora Kintz owned these certificates, that Edward H. Boylan was her attorney, agent, and business adviser, that while that relation existed, he came into possession of them and that they bore the blank endorsement of Flora Kintz, that the circumstances under which, and the purpose for which, Edward H. Boylan got possession are undisclosed. It is not disclosed even that he obtained possession by and with her consent.

Assuming that Mrs. Kintz delivered these certificates to Edward H. Boylan with intent to transfer title to him, the burden would be upon him and those claiming under him, and having no better right than he had, to prove that no undue influence or undue advantage had been taken. 5 Am. Jur., 289. The rule is fundamental to the relation of attorney and client. That burden has not been sustained in this case.

Assuming that Edward H. Boylan had a voidable title or had been clothed with indicia of title, or authority by Mrs. Kintz, through the endorsement of her name and the intentional delivery of the certificates to him, the defendant could defend against the right of the plaintiff to rescind the voidable title, by proving and only by proving that she was a bona fide purchaser for value. This she attempted to do.

308

We are of the opinion, however, that the circumstances to which she testified show more clearly that she knew the title was defective than otherwise. Her testimony on this subject and on the subject of the consideration for the transfer is indefinite and unconvincing, and insufficient to bar the clear pre-existing title of the plaintiff's testatrix. We think it manifest that the court erred in giving a preponderating weight to this evidence.

We are of the opinion that the verdict and judgment are manifestly against the weight of the evidence.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

ROSS, P. J., and HILDEBRANT, J., concur.